# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT O'DONNELL, | ) | |
| | ) | Civil Action No. 10-1478 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | Electronic Filing |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

Scott O'Donnell ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381 - 1383f ("Act").  This matter comes before the court on cross motions for summary judgment.  (ECF Nos. 8, 10).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part, and Defendant's Motion for Summary Judgment is DENIED.

**II.    PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI with the Social Security Administration on November 21, 2007, claiming an inability to work due to disability beginning August 1, 2007. (R. at 78 – 82)[1]. Plaintiff was initially denied benefits on July 10, 2008. (R. at 54 – 62). A hearing was scheduled for February 17, 2010, and Plaintiff appeared to testify represented by counsel. (R. at 20). A vocational expert also testified. (R. at 20). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on March 29, 2010. (R. at 6 – 19). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on September 19, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 3).

Plaintiff filed his Complaint in this court on November 5, 2010. (ECF No. 2). Defendant filed his Answer on January 20, 2011. (ECF No. 3). Cross motions for summary judgment followed. (ECF Nos. 8, 10).

**III.    STATEMENT OF THE CASE**

A. General Background

Plaintiff was born on October 1, 1974, and was thirty five[2] years of age at the time of his administrative hearing. (R. at 78 – 82). Plaintiff was divorced, with children. (R. at 28, 148). He did not have custody, however. (R. at 28). Plaintiff lived with his parents. (R. at 23, 28). He progressed no farther than an eighth grade education[3]. (R. at 23). Plaintiff had been enrolled

---

[1]    Citations to ECF Nos. 4 – 4-8, the Record, *hereinafter*, "R. at __."

[2]    Plaintiff is defined as a, "Younger Person," at all times relevant to this determination. 20 C.F.R. §§ 404.1563, 416.963.

[3]    At his hearing, Plaintiff indicated that he was unsure as to why he stopped school in the eighth grade. (R. at 23). Evidence on record indicated that he was expelled following accusations of lighting a fire in a school bathroom and creating a bomb scare. (R. at 151).

in special education classes while in school. (R. at 34). Plaintiff was last employed three to four years prior to his hearing. (R. at 23).

    B. Medical/Psychiatric History

In September of 1994, Plaintiff was examined by psychologist James McCabe. (R. at 138 – 40). Dr. McCabe administered two tests to determine Plaintiff's level of intellectual functioning. (R. at 138 – 40). Plaintiff received a verbal IQ score of 72, and performance IQ score of 71, and full scale IQ score of 71. (R. at 138 – 40). These scores placed Plaintiff in the "Mildly Retarded range." (R. at 138 – 40). Plaintiff's reading, spelling, and arithmetic skills were at the third grade level. (R. at 138 – 40). Plaintiff exhibited moderately retarded long term memory and logical thought processes. (R. at 138 – 40). Dr. McCabe concluded that Plaintiff would be unable to achieve goals within reasonable time limits, maintain good on-task behavior without close supervision, and would require assistance in managing personal finances. (R. at 138 – 40).

Dr. McCabe also performed a psychiatric activities assessment in October of 1994. (R. at 141 – 44). Plaintiff was found to be capable of simple cleaning, shopping, and cooking, could use public transit, and maintained fair personal grooming and hygiene. (R. at 141 – 44). He did not pay his bills or help to maintain his residence. (R. at 141 – 44). Plaintiff was able to get along well with others, but had difficulty initiating social contacts. (R. at 141 – 44). He also had no interest in group activities. (R. at 141 – 44). He was found to be in the fair to good range in terms of his ability to communicate clearly, exhibit social maturity, interact with peers, and interact with the public. (R. at 141 – 44). Plaintiff was found to be capable of following simple instructions and making decisions, but had a poor ability to perform at a consistent pace, sustain a routine, finish a task, and perform within a schedule without supervision. (R. at 141 – 44).

Finally, Dr. McCabe noted that in stressful situations, Plaintiff had a fair ability to adapt to changes, react to deadlines, make decisions, and exhibit awareness of normal hazards and take appropriate precautions. (R. at 141 – 44). However, his reaction to conflict and his ability to maintain regular attendance was poor. (R. at 141 – 44).

Psychologist Daniel Moore performed an examination of Plaintiff for the Pennsylvania Bureau of Disability Determination on October 27, 2005. (R. at 145 – 66). Plaintiff appeared for the evaluation neatly and cleanly dressed. (R. at 145 – 66). He was fully alert and oriented. (R. at 145 – 66). During his interview, Plaintiff was guarded and exhibited a flat, bland affect. (R. at 145 – 66). Dr. Moore observed a great deal of negativity and passive opposition during the interview. (R. at 145 – 66). Plaintiff was noted to show feelings of hopelessness and helplessness. (R. at 145 – 66). Throughout the examination, Plaintiff appeared to be markedly anxious and inattentive. (R. at 145 – 66).

Objective testing indicated that Plaintiff was mentally retarded. (R. at 145 – 66). Plaintiff was, however, able to understand and follow directions, and he exhibited the ability to exercise rational judgment. (R. at 145 – 66). Dr. Moore did observe a low frustration tolerance and slow mental processing. (R. at 145 – 66). Verbal IQ was 69, performance IQ was 78, and full scale IQ was 71. (R. at 145 – 66). Plaintiff's test results indicated borderline mentally retarded, mentally deficient intellectual functioning. (R. at 145 – 66). Plaintiff could read at a fourth grade level. (R. at 145 – 66). Dr. Moore considered Plaintiff to be socially and occupationally dysfunctional. (R. at 145 – 66). He repeatedly failed to sustain work obligations and behaviors, failed to conform to social norms and acted impulsively, was cognitively inflexible, made irrational judgments in social situations, could become hostile, and was unlikely to be able to manage benefits in his own interests. (R. at 145 – 66).

On March 25, 2008, Charles Diederich, M.D. examined Plaintiff for the Bureau of Disability Determination. (R. at 239 – 47). Dr. Diederich noted that Plaintiff claimed to have sustained a lower back injury in 1991 when riding on a bus that was involved in an accident. (R. at 239 – 47). Subsequent treatment with a chiropractor and pain medication did not provide much improvement in symptoms. (R. at 239 – 47). However, the pain was localized in the lower back, was not radiating, and did not create weakness or numbness. (R. at 239 – 47). Plaintiff had not engaged in any sort of treatment for his back pain for several years. (R. at 239 – 47). Plaintiff appeared to tolerate his pain well, and did not take any medications for pain relief. (R. at 239 – 47).

Dr. Diederich concluded that Plaintiff was not limited with respect to lifting, carrying, standing and walking, sitting, pushing and pulling, or postural activities. (R. at 239 – 47). Due to his asthma, Plaintiff needed to avoid dust, fumes, odors, and gases. (R. at 239 – 47). Due to a hand injury sustained while working as a meat mixer, he would be limited with respect to handling and fingering. (R. at 239 – 47). This was the extent of Plaintiff's functional limitation. (R. at 239 – 47).

In May of 2008, Jan Melcher, Ph.D. completed a mental residual functional capacity ("RFC") assessment of Plaintiff. (R. at 262 – 65). She concluded that he suffered from mental retardation. (R. at 262 – 65). However, he was only moderately to not significantly limited in all areas of functioning. (R. at 262 – 65). Dr. Melcher explained that Plaintiff was only so limited because his basic memory processes were intact, he could understand, retain, and follow simple jobs instructions, he would be able to maintain regular attendance and be punctual, he could complete a normal workday, he could ask simple questions and accept instructions, he was self-sufficient, he could sustain an ordinary routine without special supervision, and he had managed

to obtain jobs not involving complicated tasks. (R. at 262 – 65). As a result, Plaintiff was determined to be capable of full-time work. (R. at 262 – 65).

A physical RFC assessment of Plaintiff was completed by Michael Niemiec, D.O. in July of 2008. (R. at 276 – 82). Dr. Niemiec diagnosed Plaintiff with asthma, low back myalgia, and remote traumatic amputation of the 3rd/4th fingertips of the right hand. (R. at 276 – 82). Yet, Plaintiff was found to be capable of occasionally lifting one hundred pounds, frequently lifting fifty pounds or more, standing and walking six hours of an eight hour workday, sitting six hours, and unlimited pushing and pulling. (R. at 276 – 82). Plaintiff would need to avoid extreme heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 276 – 82). Plaintiff was otherwise unlimited. (R. at 276 – 82). Dr. Niemiec based his conclusions upon the evidence that Plaintiff could care for himself and maintain his residence, he could drive, treatment controlled his physical conditions, and that Dr. Diederich generally overestimated the degree of Plaintiff's limitations. (R. at 276 – 82).

Plaintiff was examined by his primary care physician Dr. S. Williams in September of 2008 for complaints of lower back pain. (R. at 289). The symptoms had been ongoing for one week. (R. at 289). Plaintiff was prescribed vicodin, flexeril, and ibuprofen. (R. at 289). He was also advised to seek treatment at a pain clinic. (R. at 289). Plaintiff's back pain had previously been mentioned to Dr. Williams, but treatment was not prescribed. (R. at 299, 303). Plaintiff claimed the pain was worse when sitting and standing. (R. at 289). In October of 2008, Plaintiff again was seen by Dr. Williams. (R. at 287). Plaintiff was complaining of lower back pain despite seeking treatment at a pain clinic. (R. at 287). Dr. Williams noted that Plaintiff's pain waxed and waned. (R. at 287).

C. Administrative Hearing

Plaintiff testified that he has held a number of full-time jobs. Plaintiff described working as a dishwasher at a restaurant, but quit because the standing and lifting caused significant back pain. (R. at 24). Plaintiff was employed as a security guard for three months, but was terminated because he had failed to disclose a felony conviction[4]. (R. at 24, 27). He also claimed that asthma interfered with his ability to perform his job. (R. at 24). Plaintiff worked for another employer as a security guard, but that position was only temporary. (R. at 28 – 29). Plaintiff was employed as a meat mixer at a processing plant, and operated a forklift as part of his duties. (R. at 29). Plaintiff also worked at two different plastics companies. He was terminated from the first because he could not properly perform the job of gathering and shipping materials due to back pain. (R. at 30). At the second plastics company, Plaintiff operated machinery for sorting and removing plastic, and did very little lifting. (R. at 30).

Plaintiff believed that he was incapable of maintaining full-time employment because of problems with his back, asthma, and cognitive impairments. Specifically, Plaintiff claimed that if he stood for long periods he suffered sharp pains in his lower back. (R. at 31). He would experience the same pain if he tried to lift anything. (R. at 31). He conceded, however, that his doctors repeatedly informed him that there was nothing abnormal about Plaintiff's back. (R. at 31). Plaintiff only took over-the-counter aspirin for pain relief. (R. at 31).

Plaintiff explained that he used an inhaler regularly for treatment of his asthma. (R. at 25). He also stated that he had recently required a visit to the emergency room because of an asthma attack while he was sick with the flu. (R. at 25). Plaintiff saw his primary care physician, "once in a while," to check up on his asthma. (R. at 26).

---

[4] Plaintiff's work history was interrupted from 1996 until 2000 due to incarceration for automobile theft. (R. at 27).

With respect to cognitive problems, Plaintiff described becoming easily frustrated when he had difficulty understanding instructions or completing tasks. (R. at 32). Plaintiff explained that he did not have problems getting along with others. (R. at 31). He also did not believe that he had problems with anger in the past. (R. at 31). He did not have problems with taking instructions or getting along with co-workers. (R. at 32). He did attest to having difficulty sustaining concentration. (R. at 32). He needed to be reminded to stay on task and complete work. (R. at 32).

Plaintiff did not have any hobbies, and only occasionally watched television. (R. at 33). He did little or no reading, and was capable of some simple math. (R. at 35). However, he would go on the internet. (R. at 33). He also would go out for drinks with friends. (R. at 33). Plaintiff continued to maintain his driver's license. (R. at 27).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether Plaintiff could return to any past relevant work if limited to light exertional activity, requiring lifting no more than twenty pounds occasionally, with no exposure to dust, fumes, or noxious odors, limited to simple tasks requiring no reading or mathematical ability beyond a fourth grade level, and requiring no interaction with the general public or maintaining close interaction and cooperation with co-workers. (R. at 37). The vocational expert replied that Plaintiff would be capable of returning to past relevant work as the plastic machine operator. (R. at 37).

Plaintiff's attorney asked whether Plaintiff could hold such a position if he were prone to outbursts of anger towards co-workers and supervisors. (R. at 37). The vocational expert explained that two outburst, at most, would be tolerated before termination. (R. at 37 – 38). The attorney then asked whether the position would be available if Plaintiff needed to be reminded to stay on-task twice per hour. (R. at 38). The vocational expert stated that it would not be

available. (R. at 38). The vocational expert also went on to say that absences in excess of one half day per month would preclude full-time employment. (R. at 39).

IV.  **STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[5] and 1383(c)(3)[6]. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. *See* 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether substantial evidence exists in the record to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of

---

[5]  Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[6]  Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

9

record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). In short, the court can only test the adequacy of an ALJ's decision based upon the rationale explicitly provided by the ALJ; the court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The ALJ must utilize a five-step sequential analysis when evaluating whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can

perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

V.  **DISCUSSION**

In his decision, the ALJ concluded that Plaintiff suffered from medically determinable severe impairments in the way of asthma, chronic back pain, and borderline intellectual functioning. (R. at 11). Despite these impairments, the ALJ determined that Plaintiff was limited to light exertional work, except that he must avoid dust, fumes, and noxious odors, and may only be required to complete simple tasks not involving reading or arithmetic above a fourth grade level. (R. at 13). Consistent with the testimony of the vocational expert, Plaintiff was capable of returning to past relevant work as a plastics machine operator. (R. at 15).

Plaintiff does not object to any of the ALJ's physical limitations findings, here. Plaintiff objects to the mental limitations findings of the ALJ, first arguing that the ALJ erred in failing to find a severe mental impairment at Step 2, and arguing second that the ALJ erred in failing to give controlling weight to the opinions of Drs. McCabe and Moore which pre-dated the alleged disability onset date. (ECF No. 9 at 4, 7). The arguments are essentially one and the same, because they both rest upon the presumption that the ALJ erred by not fully crediting these two psychologists' reports.

11

While it must be noted that Plaintiff does not point to what particular severe mental impairment the ALJ should have found at Step 2 based upon the record evidence, the court cannot judge the adequacy of the ALJ's decision under either of Plaintiff's arguments, because the ALJ barely scratched the surface of medical findings bearing upon Plaintiff's mental health in what is a fairly concise medical record. The relative consistency of the IQ scores found by each psychologist and the severity of limitations noted, despite the passage of time, may have indicated a continuing history of psychological limitation. However, there was no discussion by the ALJ.

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ did not adequately meet his responsibilities under the law.

With respect to the findings of Drs. McCabe and Moore, the Defendant makes a number of arguments requesting that the court not acknowledge the psychologists' findings due to the alleged irrelevance of their reports. However, a finding that substantial evidence underpinned an ALJ's decision is based solely upon the findings within the ALJ's decision. There is strong evidence weighing in Plaintiff's favor within the psychologists' notes, and even if they were justifiably rejected by the ALJ, this court cannot judge the propriety of the ALJ's decision

without an explanation. The ALJ cannot reject probative evidence for "no reason or for the wrong reason." *Morales v. Apfel*, 255 F.3d 310, 317 (3d Cir. 2000) (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ's decision should allow a reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). "Courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review." *Cotter*, 642 F.2d at 705 n. 7 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

The ALJ undoubtedly found Drs. McCabe and Moore's findings relevant enough to rely upon them when determining that Plaintiff had a severe impairment in the way of borderline intellectual functioning – citing specifically to IQ scores, and citing findings that Plaintiff's reading and mathematics skills were at no greater than a fourth grade level.[7] (R. at 12). A proper analysis would have included the ALJ's reasoning behind adopting the psychologists' findings for intellectual functioning, while simultaneously rejecting their mental health findings/limitations in favor of those of a non-examining state agency consultant – Dr. Melcher.

## VI. CONCLUSION

Based upon the foregoing, the ALJ failed to adequately discuss all relevant medical evidence regarding Plaintiff's psychological limitations. As a result, this court will not conclude that substantial evidence supported the ALJ's decision. "On remand, the ALJ shall fully develop

---

[7] Defendant argues, in part, that Dr. McCabe and Dr. Moore's opinions were irrelevant because of the respective ages of their reports. Dr. McCabe's opinion was not quite thirteen years old, and Dr. Moore's was not quite two years old. Yet, as pointed out by Plaintiff, they both contained significant limitations findings related to Plaintiff's psychological state. No authority holding that this factor, alone, rendered the opinion evidence irrelevant was provided. In fact, the regulations specifically provide that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for *at least the 12 months preceding* the month in which you file your application…" 20 C.F.R. §§ 404.1512(d), 416.912(d) (emphasis added). Further, in *Giese v. Comm'r of Soc. Sec.*, 251 Fed. Appx. 799, 804 (3d Cir. 2007), exclusion of evidence prior to an alleged onset date was held to have been proper only because the ALJ provided an explanation as to why at least some of the evidence predating the onset date would not be afforded substantial weight.

the record and explain [her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Commissioner of the Social Security Administration*, 625 F.3d 798, 800 – 01 (3d Cir. 2010). *See also Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ. *Id.* at 801 n. 2.

Accordingly, Plaintiff's Motion for Summary Judgment is granted, to the extent it seeks further review by the ALJ, and denied, to the extent it seeks a reversal and entry of final judgment in favor of Plaintiff; Defendant's Motion for Summary Judgment is denied; and, the decision of the ALJ is vacated and the case remanded for further consideration not inconsistent with this opinion. An appropriate Order follows.

August 8, 2011

                                                       Lisa Pupo Lenihan
                                                     United States Magistrate Judge

cc/ecf: All counsel of record.